IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Allen Bobo, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>Warden of Evans Correctional )<br>Institution, )<br>)<br>Respondent. )<br>_____ ) | Civil Action No. 1:20-cv-3078-TMC<br><br>**ORDER** |

Petitioner Allen Bobo, a state prisoner proceeding *pro se*, filed this action pursuant to 28 U.S.C. § 2254. (ECF No. 1). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this matter was referred to a magistrate judge for all pretrial proceedings. Before the court is the magistrate judge's Report and Recommendation ("Report") recommending that the court grant Respondent's motion for summary judgment (ECF No. 13) and dismiss the petition with prejudice. (ECF No. 22). Petitioner filed objections to the Report. (ECF No. 25). The matter is now ripe for review.

**Background**

Proceedings in State Court

On March 1, 2016, Petitioner pled guilty in the Abbeville County Court of General Sessions to pointing or presenting a firearm in violation of S.C. Code Ann.

§ 16-23-0410; unlawful neglect of a child in violation of S.C. Code Ann. § 63-05-0070; and domestic violence of a high and aggravated nature in violation of S.C. Code Ann. § 16-25-0065. (ECF No. 12-1 at 1, 6, 97–102). These charges grew out of the same incident on September 17, 2015, which the State recounted at the plea hearing as follows:

> The defendant has a child with [Nakelia Johnson] standing right here to my right. He had been using her car by her permission. She went to him that day, wanted the car back. He wouldn't give her the car back and an argument ensued. And during that argument, he actually produced a handgun and pointed it at her while she was holding their seven-month-old child that he has with her. Subsequently, he left the scene, went down the road. When she went to where he was to recover the car[,] [h]e had shot the car seven times. It had seven bullet holes in it.

*Id*. at 9. Petitioner stated that he agreed with the facts as stated by the prosecutor. *Id*. At this same hearing, Petitioner also pled guilty to possession of marijuana with intent to distribute, in violation of S.C. Code Ann. § 44-53-0370. *Id*. at 6, 103–04.

On September 18, 2015, Ms. Johnson gave a statement to law enforcement officers indicating that, during the incident in question, Petitioner "pulled a gun out while I had my child in my arms saying he would kill me [because] I said I was going to call the police on him." *Id.* at 84. Ms. Johnson stated further that after she obtained her car from Petitioner, he discharged the handgun and texted Ms. Johnson that he "shot up [her] car." *Id*. Ms. Johnson later signed an affidavit stating that she did not intend to testify at Petitioner's trial as a witness for the State and that she

wished to dismiss the charges against Petitioner but not specifically refuting any portion of her initial statement. (ECF No. 12-5 at 3). Ultimately, at Petitioner's plea hearing, Ms. Johnson gave the following statement under oath to the court:

> [I]t was just all a big misunderstanding, and my kids are suffering. They're kids suffering, and I just pray that you have mercy on him because I forgive him for what he did, you know, and my kids miss him a whole lot. So I just pray that you have mercy for him.

(ECF No. 12-1 at 11).

The State recommended a sentencing cap of twelve years. *Id*. at 4. The court explained to Petitioner that it was not bound by the State's sentencing recommendation and advised that, by pleading guilty, Petitioner would be giving up his right to a jury trial. *Id*. at 6–8. Petitioner stated that he understood the court's admonitions and still wanted to plead guilty and testified that he was satisfied with his attorney's services and that he had been afforded enough time to talk to her. *Id*. at 7–8. Petitioner received a ten-year sentence on his conviction for domestic violence of a high and aggravated nature, and concurrent sentences of ten years for the unlawful neglect charge and five years for pointing or presenting a firearm. *Id*. at 22–23. Petitioner also received a concurrent ten-year sentence on the possession with intent to distribute charge. *Id*. Petitioner did not file a direct appeal.

On June 9, 2016, Petitioner filed a *pro se* application for post-conviction relief ("PCR"), asserting that he received ineffective assistance of counsel and that his

3

guilty plea was involuntary. (ECF Nos. 12-1 at 25–31; 12-2 at 2–12). The Abbeville County Court of Common Pleas conducted an evidentiary hearing at which Petitioner was represented by counsel. (ECF No. 12-1 at 38–82). Petitioner testified that he only met with his appointed counsel three times, for three to four minutes each time, prior to pleading guilty; that counsel did not go through discovery with him; and that counsel failed to speak to the victim, Ms. Johnson, about her claim that the incident in question was a misunderstanding. *Id*. at 43–45. Petitioner further testified that he told his attorney he wanted a jury trial and that, on the day of his guilty plea, he believed he was appearing in court for a bond hearing rather than to go to trial or plead guilty. *Id*. at 48. According to Petitioner, when he "tr[ied] to explain to [his] public defender that . . . I'm not taking no plea," his attorney stated that he was "guaranteed to lose that trial because of [Ms. Johnson's initial] statement." *Id*. Petitioner acknowledged that the State offered a plea arrangement in which it would recommend a total sentence of twelve years or less, but he testified he did not understand it fully at the time of his guilty plea. *Id*. at 48–49.

Ms. Johnson appeared at the PCR hearing on behalf of Petitioner and testified that during the incident in question he never pointed a gun at her or their child and suggested that her prior statement was misunderstood by law enforcement. *Id*. at 58–59. Ms. Johnson further testified that she spoke with plea counsel's assistant and informed her that she did not want to be involved in any way but that she never

4

communicated to counsel that Petitioner did not point a gun at her or the child. *Id*. at 61–62.

Finally, plea counsel for Petitioner testified that after she was appointed to handle Petitioner's case, she met with him three or four times for approximately 45 minutes to an hour each time. *Id*. at 64–65. She testified that she obtained discovery from the prosecutor and discussed this discovery with Petitioner. *Id*. at 65–66. Counsel indicated additionally that she explained to Petitioner what could potentially happen if he elected to go to trial. *Id*. at 67. According to counsel, her in-house investigator contacted Ms. Johnson who indicated that "she didn't want him to do five to 10 years, but a couple of years" and that she "[w]asn't planning on coming to court" and would only give a statement about how Petitioner "doesn't take responsibility for his actions." *Id*. at 67–68. Counsel testified that she discussed with Petitioner the problems presented by Ms. Johnson's statement to law enforcement and that she explained to him that just "because a witness says that they aren't going to show up to court doesn't mean that the State would drop the charges." *Id*. at 69. Counsel stated that she told the assistant solicitor in this case that the victim did not wish to participate but that the assistant solicitor stated he would not be dismissing the charge and that, in fact, the prosecution possessed a copy of a letter Petitioner wrote to Ms. Johnson "asking her to tell the State the charges were a big misunderstanding." *Id*. at 74.

5

Following the hearing, the court denied Petitioner's PCR application. *Id*. at 86–95. With respect to Petitioner's ineffective assistance of counsel claim, the PCR court found that Petitioner "failed to meet his burden of proving Counsel was ineffective for failing to discuss and investigate his case, and to fully investigate Ms. Johnson," noting that "Counsel employed a private investigator [who eventually contacted] Ms. Johnson" and "fully discussed with [Petitioner] that the solicitor still had control of the prosecution" despite Ms. Johnson's desire not to be involved. *Id*. at 90–91. The PCR court further noted that Ms. Johnson "did not state that she did not want [Petitioner] prosecuted at the plea hearing." *Id*. at 91. Accordingly, the PCR court concluded that Petitioner "failed to meet his burden of proving Counsel was deficient in her investigation or preparation" or "his burden of proving he would not have pled guilty but proceeded to trial but for Counsel's actions." *Id*.

With respect to Petitioner's involuntary plea claim, the PCR court concluded that Petitioner was not ambushed by the plea hearing but was "fully advised that he was pleading guilty" and that "the record does not support the conclusion that that the plea was anything other than a free and voluntary decision by him." *Id*. at 93. The PCR court pointed out the transcript of the plea hearing reflected that Petitioner "waived all of his rights, including his right to a jury trial"; "acknowledged that no one had coerced or forced him to plea to the charges"; "told the judge he was pleading guilty because he was guilty of the charges" and agreed with the solicitor's

recitation of the facts, including "the fact that he produced the gun and pointed the gun at the victim while she held their seven-month-old child." *Id*. Finally, the PCR court noted that Petitioner claimed he was "satisfied with his Counsel's representation of him." *Id*. at 93–94. Therefore, the PCR court concluded that, given the totality of the circumstances, Petitioner's plea was freely, voluntarily, and knowingly entered. *Id*. at 94.

Appellate counsel was appointed for Petitioner and sought appellate review of the PCR court's order by filing a petition for a writ of certiorari from the South Carolina Supreme Court and then moved to be relieved pursuant to *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988). (ECF No. 12-3). The certiorari petition challenged the denial of PCR relief "where the only witness . . . did not want Petitioner to be prosecuted, . . . wanted no involvement in the case, . . . negated the elements of the crimes for which Petitioner was charged, and where plea counsel . . . [told Petitioner] that he was guaranteed to lose at trial[.]" *Id*. at 3. Petitioner filed two *pro se Johnson* briefs reiterating Ms. Johnson's position that she did not wish to pursue the charges against Petitioner. (ECF Nos. 12-4; 12-5). The certiorari petition was transferred to the South Carolina Court of Appeals which denied the petition and granted appellate counsel's motion to be relieved. (ECF No. 12-6).

## Petitioner's § 2254 Petition

Petitioner then filed the instant habeas petition raising two grounds for relief:

7

> (1) My attorney wasn't truthful my guilty plea was involuntary by telling me that I was guaranteed to lose at trial if I took a Jury trial. The victim statement didn't say I pointed a gun also the victim testified at the PCR hearing that I didn't point a gun and that she did a[n] affidavit saying she didn't want to pursue charges.
>
> (2) Victim statement didn't say I pointed a gun, victim testified at PCR hearing that I never pointed a gun. I wanted a Jury trial but my attorney told me I was guaranteed to lose at trial because of statement. My attorney also confirmed at my PCR hearing that the purpose of the hearing which resulted in my guilty plea was originally understood to be something else which I knew nothing about cause I was told it was gone be a bond hearing. Plus the victim filed a[n] affidavit saying she didn't want to prosecute.

(ECF No. 1 at 5–6).

The magistrate judge concluded that Petitioner "failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding his involuntary guilty plea and ineffective assistance of counsel claims," (ECF No. 22 at 28), and that, in light of the evidence presented, Petitioner "failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination of these issues," *id*. at 28–29.

## Legal Standards

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo*

determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered

by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

As for the governing substantive standards under 28 U.S.C. § 2254,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim –
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

28 U.S.C. § 2254(d). "[T]o grant [a] habeas petition, [the court] must conclude that the state court's adjudication of [the petitioner's] claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004). Additionally, the factual findings of the state court are entitled to deference and are "presumed to be correct" unless Petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To establish a Sixth Amendment violation for ineffective assistance of counsel, a petitioner must show both that his counsel's representation "fell below an

10

objective standard of reasonableness," and that such representation caused him to suffer prejudice. *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984). To establish that he or she has suffered such prejudice, a petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When there has been a guilty plea, the petitioner must prove that counsel's representation was below the standard of reasonableness, and that, but for counsel's unprofessional errors, there is a reasonable probability that petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

## Discussion

In his objections, Petitioner raised the same arguments presented to and rejected by the magistrate judge. *Compare* (ECF No. 1), *with* (ECF No. 25). He argues that his plea counsel's performance was constitutionally deficient and his plea was involuntary because counsel advised him he would lose at trial even though, according to Petitioner, (1) "Ms. Johnson testified [at the PCR hearing] that I never pointed a gun at her or the child and her statement did not say I pointed a gun"; (2) "no gun was ever found on [his] person or presented as evidence"; (3) "the investigator never showed photos of a car [having] been shot up"; and (4) counsel only met with him twice over a five or six month period prior to the plea and failed to talk to Ms. Johnson before the plea hearing. (ECF No. 25).

11

Petitioner's objections simply repeat the allegations and arguments raised in his petition without identifying any error in the magistrate judge's analysis. Restating arguments previously submitted to and rejected by the magistrate judge does not constitute a specific objection to the magistrate judge's Report, *see Frazier v. Wal-Mart*, C.A. No. 6:11-1434-MGL, 2012 WL 5381201, at *1 (D.S.C. Oct. 31, 2012); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012), and objections which "merely express disagreement with the magistrate judge's Report . . . in lieu of any actual argument or specific assertion of error in the magistrate judge's findings" do not constitute specific objections requiring *de novo* review by this court, *Lowdermilk v. LaManna*, Civ. A. No. 8:07-2944-GRA, 2009 WL 2601470, at *2 (D.S.C. Aug. 21, 2009). Accordingly, the court need only review the Report for clear error. *Dunlap v. TM Trucking of the Carolinas*, LLC, 288 F. Supp. 3d 654, 662 (D.S.C. 2017).

The court can find no error in the magistrate judge's conclusions and recommendations, clear or otherwise. The magistrate judge thoroughly considered each point raised in Petitioner's Petition and objections. *See* (ECF No. 22). With respect to the ineffective assistance of counsel claim, the magistrate judge determined the evidence before the PCR court supported its finding that Petitioner did not meet his burden of showing counsel failed to sufficiently discuss Petitioner's case with him or investigate Ms. Johnson's potentially exculpatory testimony. *Id*. at

26. The magistrate judge further concluded that the PCR court reasonably found that Petitioner failed to establish that, but for counsel's ostensibly deficient performance, he would not have pled guilty but would have insisted on going to trial. *Id*. Despite the fact the Ms. Johnson's initial statement did not expressly state Petitioner "pointed a gun" at her and the child, the Report highlights facts and evidence to the contrary. As the magistrate judge makes clear, at the plea hearing, Petitioner agreed with the solicitor's statement that "he actually produced a handgun and pointed it at [Ms. Johnson] while she was holding their seven-month-old child." *Id*. at 4. The magistrate judge noted that Ms. Johnson testified at the plea hearing "but did not state that Petitioner did not point a gun at her or otherwise dispute the State's version of the facts." *Id*. at 20. Additionally, the magistrate judge emphasized plea counsel's PCR testimony during which she explained that, based on the interaction of her investigator with Ms. Johnson, counsel understood Johnson's position was that "the incident in question 'was just a misunderstanding,' but the actual facts of what happened were not disputed." *Id*. at 21. Finally, the Report recounts counsel's PCR testimony that the solicitor indicated he would not dismiss the charges despite Ms. Johnson's reluctance to testify for the State and that she informed Petitioner that "just because a witness says they aren't going to show up to court doesn't mean the

State would drop the charges" and that "dismissing a case is not a right a victim has." *Id*.[1]

With respect to Petitioner's involuntary plea claim, the magistrate judge found that the PCR court's decision was supported by the record, including counsel's testimony that she explained to Petitioner "what would be happening at the plea hearing, what sentence Petitioner could receive, and whether his charges were violent or non-violent"; that "she never had any indication Petitioner did not understand what was happening during the plea hearing"; that "Petitioner never informed her that he did [not point] a weapon at Johnson and their child"; that she told Petitioner before his plea that "he did not have to plead guilty yet, but that his family wanted him to plead"; and that "Petitioner knew he was pleading guilty on the day of the plea hearing." *Id*. at 21–22. The Report further notes that the state court "made clear to Petitioner his sentencing decision was not bound by the State's recommendation" but that "Petitioner indicated he understood and wished to plead guilty to each charge." *Id*. at 27–28. Likewise, as stated by the magistrate judge, Petitioner was informed "that his decision to plead meant he would be waiving his right to present witnesses and defenses, confront the witnesses against him, to remain silent, and to have a jury determine guilt beyond a reasonable doubt" and that

---

[1] As for Petitioner's argument that the lack of photos showing bullet holes, counsel testified that she spoke to the "lieutenant at [the] time nand he said that they did find bullet holes in the vehicle." (ECF No. 12-1 at 69).

"Petitioner's answers to the court indicated that he understood the waivers inherent in the entry of his guilty plea, and that he was pleading guilty on his own free will and with the advice of competent counsel with whom he was satisfied." *Id*. at 28.

Having thoroughly reviewed the record, the Report, and Petitioner's objections, the court concludes each assertion raised in the objections was considered and fully addressed by the Report. The court finds no reason to deviate from the Report's recommended disposition. The court, therefore, **ADOPTS** the magistrate judge's Report (ECF No. 22) and **GRANTS** Respondent's motion for summary judgment. (ECF No. 13).

Finally, a certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that Petitioner failed to make a "substantial showing of the denial of a constitutional right." Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

Anderson, South Carolina
April 22, 2021